ROBERTSON, Respondent, vs. Dow, Appellant.

*January 14—February 3, 1914.*

*Appeal: Harmless errors: Questions considered: Form of excep-
tions: Briefs: Judgment: Upon whom binding: Agency: Au-
thority to bring suit: Partnership: Pleading: Reply: Instruc-
tions to jury: Evidence: Unsigned agreement: Conclusions:
Witnesses: Competency: Transactions with person since de-
ceased.*

1. Slight inaccuracies in the statement of the issues in a case
   by the court to the jury are immaterial errors and will be
   disregarded on appeal.
2. One who is a party to an action by his authority, given before-
   hand or by subsequent ratification, is bound by the result.
3. In the brief for appellant counsel should particularly point out
   and discuss in an orderly way the errors relied upon, and
   should not, upon a mere reference to the exceptions, ask this
   court to review the trial court's charge to the jury.
4. Exceptions to the charge of the trial court to the jury should
   consist of concise paragraphs, pointing out specifically particu-
   lar detail portions of the instructions, each covering a single
   matter, as contrary to law and not warranted by the evidence.
5. Whenever it appears probable that injustice might otherwise
   be done to a party on appeal, the court will disregard techni-
   calities and rigid rules of practice and will review the record
   notwithstanding shortcomings of counsel in presenting the
   case.
6. In an action upon the judgment of a court of another state, an
   answer that the action in which such judgment was rendered
   was brought in defendant's name without authority is purely
   defensive and a reply is not required.
7. There being evidence tending to show that a person who caused
   an action to be brought in defendant's name was either his
   agent or his partner in the business to which such action was
   related, instructions submitting to the jury the questions
   whether such person had express authority "as agent or in
   any other capacity," and whether he was a partner and as
   such had the right to bring the action without express au-
   thority, were proper, where the court also instructed as to
   the essential facts of a partnership and left it to the jury to
   determine whether or not such facts existed.
8. An unsigned paper purporting to embody an agreement between
   certain parties named therein, is admissible in evidence

Robertson v. Dow, 155 Wis. 605.

against one of such parties to prove the relations existing between them, when offered in connection with evidentiary admissions by him that it does indicate the actual arrangement subsisting between the persons named.

9. Persons not parties to the action and from, through, or under whom plaintiff does not in any way derive his interest or title, are not incompetent under sec. 4070, Stats., to testify as to conversations and transactions which they had with a deceased partner of defendant, in an action brought against him as surviving partner.

10. In an action to enforce a judgment rendered against defendant in an action of replevin instituted in his name in another state by direction of an alleged agent, questions put to the defendant by his counsel as to whether he ever made claim to any property in the possession of the defendant in replevin or ever authorized that action, were properly ruled out as calling for mere conclusions of the witness.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

In an action in a district court of North Dakota having jurisdiction of such subjects between *George Dow* as surviving partner of the firm of Dow & Klauber against *Fred Robertson* to recover four horses, such proceedings were duly had that a judgment, in due form, was rendered in favor of *Robertson.* Thereafter, action on the judgment was commenced by him against *Dow* in the circuit court for Dane county, Wisconsin. The complaint was in the usual form and substance. The defendant answered to the effect that T. F. Murtha, an attorney of the North Dakota court who commenced the action there did so without authority; that neither *Dow* nor his partner Klauber authorized or knew of such action until long after the trial; that the action was commenced at the instigation of one Watson who obtained possession of the horses and subsequently sold the same and appropriated the proceeds to his own use.

Thus the issue tried was as to whether *Dow*, or his partner Klauber, authorized, directly or indirectly, commencement of the Dakota action, or had knowledge of such commence-

ment and ratified the same. In the event of the question in that regard being solved in plaintiff's favor, he was clearly entitled to judgment.

There was evidence proving, or tending to prove, as the trial court viewed the matter when submitting the issues to the jury, these facts: Watson was either an agent of *Dow* and Klauber, or their partner, or interested with them in the business of selling horses in the state of North Dakota. In some one of these capacities he employed Mr. Murtha, a lawyer, or the firm of which he was a member, to commence an action in the district court in North Dakota to recover four horses of the present plaintiff and to prosecute the same to a termination. That was done, the present defendant being, at the end, the sole plaintiff. The horses were claimed to belong to the firm of which *Mr. Dow* was a member, but had been wrongfully taken by *Mr. Robertson* and were wrongfully detained by him. · In due course, pending the action, the horses were seized by the sheriff and delivered into possession of Watson as the representative of plaintiff in such action. He sold the horses and, in the end, included the proceeds in money accounted for to *Dow* and paid to him. The Dakota action resulted in a judgment in favor of the defendant therein, plaintiff herein, against *Mr. Dow*. That forms the basis of this action. Such judgment was unsatisfied when this action was commenced. *Dow* endeavored to prove his claim that Watson had no authority to represent him or the firm of which he was a member in commencing the North Dakota action; that the action was Watson's personal affair and that the proceeds of the sale of the horses which he obtained possession of in such action never came to the possession of the person, or persons, he assumed to represent, but were appropriated by him as his own property.

The court submitted the major and subsidiary controversies to the jury, instructing them on the several phases of

the case, resulting in a verdict in favor of plaintiff upon which judgment was rendered and which is now challenged on appeal.

*F. K. Shuttleworth,* for the appellant.

For the respondent there was a brief by *Tenney, Tenney & Reynolds,* and oral argument by *Edward J. Reynolds.*

MARSHALL, J.    It is contended that the trial court did not accurately state the issues between the parties.    That we regard as unsubstantial.    The real gist of the matter, as shown by the evidence, was fairly within the scope of the pleadings and, in one view, entitled plaintiff to recover. That is sufficient on this branch of the case.    Little inac- curacies in the statement of issues by a court, count for nothing.    Was *Dow* a party to the Dakota action by his authority, given originally, or subsequently ratified by him? If so, he became bound by the result.    The subject was fully submitted to the jury and the finding was in respondent's favor.

Counsel for appellant refers, without argument, to excep- tions to the court's instructions and invites this court to re- view the charge, not even referring to the page of the record or case where the same may be found.    In such circum- stances, this branch of the case might be passed over without notice.    Counsel, in his brief should refer, in an orderly way, to such exceptions to the charge as are thought material to the case and not merely incorporate the exceptions in the assignments of error and suggest, in a general way, in the argument, their existence and request this court to review them.    Exceptions are often filed covering many matters, for the purpose of preserving everything for review which, in any reasonable probability, might affect the result, with- out expecting to insist upon all of them upon appeal.    Often exceptions are saved which are, later, not deemed worthy of being presented here for consideration.    Counsel should

study a case with care and fence his activities, upon coming here, within such narrow limits as, with fair probability, to include only prejudicial errors, and should particularly point out and discuss such errors. In case of that not being done, this court has, in general, been accustomed to assume that matters not particularly pointed out and discussed do not involve error at all, or at most, ño error of prejudicial character. However, in case of its appearing probable that injustice might otherwise be done to a party, the court will not hesitate to overlook inadvertence of counsel, and, not standing on any technicalities of practice or rigid rules, will review the record as to matters not presented so as to require it.

The conditions above referred to existed here; but lest injustice might be done to a party seeking judicial instrumentalities to redress a supposed wrong, we have carefully read the instructions of the learned circuit judge, and particularly those portions included in the filed and printed exceptions and will refer to them briefly.

It is said that the court improperly submitted the matter of whether Watson had authority to commence the action in the North Dakota court in the name of *Dow* and Klauber as partners; that there was no issue raised in respect to the matter since there was no reply to that portion of the answer alleging that Watson had no authority to bring the action in question. We do not find any such allegation in the answer, but do find an allegation to the effect that the North Dakota action was started by Watson in the name of *Dow* without authority. Probably counsel intended to be understood by the exception that the answer set forth that Watson brought his own action in appellant's name and that such allegation called for a reply in order to put the matter in issue. It is sufficient to say that the allegation referred to was purely defensive and that a reply is not proper in such a case.

It is further suggested that the court improperly sub-
mitted the question of whether Watson had authority, to
represent the firm of Dow & Klauber in commencing the
Dakota action because there was no evidence tending to show
that he did.    We might, properly, pass over this subject
because counsel failed to comply with the rule as to indexing
the printed case.    There are references to the record as to
where the evidence of each witness may be found, but none
representing the printed case.    However, we have over-
looked this plain violation of a long-standing and familiar
rule and successfully searched for Watson's evidence as
printed, whereby it appears that he testified, in effect, that
he was the agent for Dow & Klauber in their business of sell-
ing horses in North Dakota; that the litigation in question
grew out of such business and that he was directed by *Mr.
Dow,* in case of needing legal assistance in the business of
*Dow* and Klauber, to employ Mr. Murtha; that, pursuant
thereto, he caused the Dakota action to be commenced, and,
in due course therein obtained possession of the horses in
question and sold them and turned the money over to *Dow,*
informing him of the pendency of such action and that it
related to such horses.    There was ample evidence given by
Watson and others to warrant the court in submitting the
question to the jury as to whether he had authority to do
what he did, and whether *Dow* received the proceeds of the
sale of the horses.

Complaint is made because the court charged the jury that

"Authority to bring the action against *Mr. Robertson* may
be conferred by express authority to Mr. Watson broad
enough to warrant Mr. Watson in bringing this action while
acting as agent or in any other capacity for *Mr. Dow* and
Mr. Klauber."

We do not observe anything wrong in that.    The instruc-
tion was plainly directed to evidence tending to show that
Watson had either general or special authority to represent

*Dow* and Klauber. The words "or in any other capacity" had reference to the evidence tending to show that, if Watson was not the employee of *Dow* and Klauber, he was a partner or was jointly interested with them in the horse business, and that in either capacity was competent to receive express authority to do what he did. Whether he acted in either of the capacities suggested by the court, and if so, which one, was left entirely to the jury as was also whether such authority as the court ruled would amount to express authority. There is nothing about the instruction which is ambiguous or erroneous or involves submission to the jury to solve a question of law.

Further complaint is made because the court instructed the jury:

"If you find that Mr. Watson did not have express authority to bring this action against *Mr. Robertson,* then you will determine from the evidence whether Mr. Watson was a partner of *Mr. Dow* and Mr. Klauber, and whether as such partner he had the right to begin this action in their name without any express authority so to do."

Counsel's suggestion that there is a contradiction between such instruction and the previous one seems to spring from want of appreciation of the plain meaning of language. The court, after submitting the question of whether Watson was expressly authorized, took up the matter of whether he had the right to do as he did in absence thereof, properly holding that, under some circumstances, no express directions were necessary. The essential circumstances were pointed out, but whether they existed or not was left to the jury.

Counsel's contention that one phase of the charge left it to the jury to determine the legal question of whether Watson and another whose name was mentioned, were partners of appellant and Klauber. There does not seem to be any merit in that claim. There was a controversy as to the facts

regarding the relations between the parties.    The court instructed the jury as to the essential facts of a partnership and left it to the jury to determine whether such facts existed or not.

Several other complaints of the charge are found in the exceptions filed.    Such exceptions are not in the form contemplated by statute and the decisions of this court.    Instead of being made up of concise paragraphs, pointing out, specifically, particular detail portions of the instructions, each covering a single matter, as contrary to law and not warranted by the evidence, the exceptions are, severally, accompanied by an explanation and species of argument, all of which might well have been omitted, though that has not been permitted to prejudice appellant.

It does not seem that further discussion of the exceptions to the charge is called for.    Sufficient has been said to indicate a general absence of merit and that failure to discuss the exceptions in an orderly way has not been allowed to work injury to appellant.    The charge as a whole, and the exceptions in detail, have been examined without disclosing any error.

The court permitted a paper to be read in evidence which appeared to have been drawn to be signed by *Dow* and Klauber with Watson and another, but was not signed by the first two persons, as bearing, in connection with other evidence, on the relations between such persons.    Counsel for appellant failed to point out in the printed case the place where the offer was made and received.    In this respect, as well as others we have referred to, and still others which might be referred to, the presentation of the case here is very faulty and imposed much labor upon us to remedy the imperfections and save the rights of the parties.    It is to be hoped that the changed practice here, in order to better protect litigants from being prejudiced by the neglects of counsel, will not have a tendency to promote inattention to the

requirements for an orderly, full presentation of such matters as are thought to require judicial review.

The record shows that the unsigned paper was offered in evidence in connection with evidentiary admissions made by appellant that it, though not signed by him and Mr. Klauber, indicated the arrangement under which the parties named therein operated. 'That seems sufficient on this branch of the case.

Mr. Watson and Mr. Gallagher were permitted to testify as to conversations and transactions which they had with the deceased partner of defendant. It is claimed that was improper under sec. 4070 of the Statutes. Where the evidence of the claimed error may be found is not pointed out. Without going into the matter at length it seems sufficient to say, that neither of the witnesses are in any respect within the prohibitions of the statute. No reason is perceived why the testimony of the two witnesses was not in every respect proper.

Appellant was asked as to whether he ever claimed any horses which were in respondent's possession or authorized the bringing of the North Dakota action, and was not permitted to answer. That was clearly right. There was no claim made that appellant, personally, made a claim for the horses, or that he personally employed attorneys to bring the Dakota action, or specifically directed the commencement of such action. Did he, in legal effect, make such claim and authorize the action by reason of authority possessed by Watson? Those were the matters in controversy. The mere conclusions of the witness which he was requested to give, were the very questions the jury were required to decide.

There are other suggestions of error made by counsel, all of which have been examined, but they seem to have too little merit to warrant further extending this opinion.

*By the Court.*—The judgment is affirmed.